**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| REGRESSIVE FILMS, LLC, a limited liability company, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Civil Action No.: 16-cv-05307 |
| WAX TRAX! FILMS, LLC, a limited liability company; THE NASH GROUP 2449, LLC, a limited liability company; JULIA NASH, an individual; and MARK SKILLICORN, an individual | ) ) ) ) ) ) | Judge Joan B. Gottschall <br><br> Magistrate Judge Young B. Kim |
| Defendants. | ) | |

| | | |
|---|---|---|
| WAX TRAX! FILMS, LLC, a limited liability company; THE NASH GROUP 2449, LLC, a limited liability company; and JULIA NASH, an individual; | ) ) ) ) | |
| Counterclaimants, | ) ) | |
| v. | ) ) | |
| REGRESSIVE FILMS, LLC, a limited liability company; JOSEPH LOSURDO, an individual; and CHRISTINA TILLMAN, an individual, | ) ) ) ) ) | |
| Counterclaim Defendants. | ) | |

## DEFENDANTS' ANSWER AND COUNTERCLAIM

1. This action arises under the copyright laws of the United States, 17 U.S.C. 101 - 709 et seq. This Court has original jurisdiction over these claims pursuant to 28 U.S.C. 1338 (a), has exclusive jurisdiction over the copyright counts under pursuant to 28 U.S.C. 1338 (a) (*sic*), and has jurisdiction over the remaining counts pursuant to 28 U.S.C. 1338 (b) and under the doctrine of pendent jurisdiction.

**ANSWER**

1.      Defendants deny Plaintiff states a valid claim under the copyright laws and are

without knowledge or information sufficient to form a belief as to the truth of the remaining

allegations of Paragraph 1 of Plaintiff's Complaint and therefore deny the same.

> 2. Venue is proper in this District pursuant to 28 U.S.C. Sections 1391(b) and (c) and 1400(a).

**ANSWER**

2.      Defendants deny Plaintiff presents a valid claim and are without knowledge or

information sufficient to form a belief as to the truth of the remaining allegations of Paragraph 2

of Plaintiff's Complaint and therefore deny the same.

> 3. PLAINTIFF, REGRESSIVE FILMS. ("REGRESSIVE") is, and at all times herein mentioned was, a Limited Liability Company organized and existing pursuant to the laws of the State of Illinois and having its registered office at 5123 North Drake Ave., Chicago, IL 60625.

**ANSWER**

3.      Defendants are without knowledge or information sufficient to form a belief as to

the truth of the allegations of Paragraph 3 of Plaintiff's Complaint and therefore deny the same.

> 4. On information and belief, DEFENDANT, WAX TRAX! FILMS, LLC. ("WAX TRAX FILMS") is, and at all times herein mentioned was, a Limited Liability Company organized and existing pursuant to the laws of the State of Illinois, having its registered office at 844 North Humphrey Ave., Oak Park, IL, 60302 and does business in and has committed the acts complained of in the Northern District of Illinois.

**ANSWER**

4.      Defendants deny Defendant Wax Trax! Films, LLC, has committed the acts

complained of and done so in the Northern District of Illinois and admit the remaining

allegations of Paragraph 4 of Plaintiff's Complaint.

2

5.    On information and belief, DEFENDANT, THE NASH GROUP 2449 LLC, ("NASH GROUP") is, and at all times herein mentioned was, a Limited liability Company organized and existing pursuant to the laws of the State of Illinois, having its registered office using the address PO Box 5563 River Forest, IL 60305 and does business under the assumed name "WAX TRAX" in the Northern District of Illinois.

**ANSWER**

5.    Defendants admit the allegations of Paragraph 5 of Plaintiff's Complaint.

6.    On information and belief, DEFENDANT JULIA NASH ("NASH") is an owner or co-owner of WAX TRAX FILMS and NASH GROUP, is the manager of WAX TRAX FILMS and NASH GROUP, has, with respect to the facts alleged in this Complaint, the right and ability to supervise the activities of WAX TRAX FILMS and NASH GROUP and has a direct financial interest in the activities of WAX TRAX FILMS and NASH GROUP and has a residence address of 844 North Humphrey Ave., Oak Park, IL, 60302.

**ANSWER**

6.    Defendants admit that Defendant Julia Nash has an ownership interest in and is

the "manager" of Wax Trax Films and Nash Group, has the right to supervise certain activities of

Wax Trax Films and Nash Group, and has the residence address alleged, but Defendants deny

the remaining allegations of Paragraph 6 of Plaintiff's Complaint.

7.    On information and belief, DEFENDANT MARK SKILLICORN ("SKILLICORN") is an owner or co-owner of WAX TRAX FILMS and NASH GROUP, is the manager of WAX TRAX FILMS and NASH GROUP, has, with respect to the facts alleged in this Complaint, the right and ability to supervise the activities of WAX TRAX FILMS and NASH GROUP and has a direct financial interest in the activities of WAX TRAX FILMS and NASH GROUP and has a residence address of 844 North Humphrey Ave., Oak Park, IL, 60302.

**ANSWER**

7.    Defendants admit Defendant Mark Skillicorn has the residence address alleged

and deny the remaining allegations of Paragraph 7 of Plaintiff's Complaint.

> 8.   There is such unity of interest and ownership between and among WAX TRAX FILMS, NASH GROUP, NASH and SKILLICORN (hereafter sometimes referred to as "WAX TRAX") that the separate personalities of the persons and legal entities no longer exist and for the purpose of the facts alleged in this Complaint, adherence to the fiction of separate legal existence would sanction a fraud or promote injustice.

### ANSWER

8.     Defendants deny the allegations of Paragraph 8 of Plaintiff's Complaint.

> 9.   Between 1978 and 1992 non-parties Jim Nash and Dannie Flesher, both now deceased, operated a record store under the name Wax Trax and a record label under the name Wax Trax Records specializing in punk, new wave and industrial music genres in Chicago, Illinois. The Wax Trax Records label was purchased in 1992 by TVT Records, in New York., and discontinued in 2001. DEFENDANT NASH is the daughter of Jim Nash.

### ANSWER

9.     Defendants admit that the deceased Jim Nash and Dannie Flesher operated a

record store and record label under the Wax Trax name, that TVT Records in New York

purchased the Wax Trax Records label in 1992, and that Defendant Julia Nash is the daughter of

Jim Nash and deny the remaining allegations of Paragraph 9 of Plaintiff's Complaint.

> 10.  In 2007 PLAINTIFF REGRESSIVE created and produced a critically acclaimed documentary on the Chicago punk music scene entitled "You Weren't There: the History of Chicago Punk from 1977 to 1984."

### ANSWER

10.     Defendants are without knowledge or information sufficient to form a belief as to

the truth of the allegations of Paragraph 10 of Plaintiff's Complaint and therefore deny the same.

> 11. WAX TRAX. (*sic*) being familiar with REGRESSIVE's "You Weren't There" film, approached REGRESSIVE to have

REGRESSIVE create and produce a documentary regarding the
Wax Trax record store and Wax Trax Records. REGRESSIVE
was to put together a crew, conduct & film interviews, edit, basic
animation, motion graphics, sound design, and deliver a final cut
of the film.

## ANSWER

11.     Defendants admit they communicated with Plaintiff about having Plaintiff

perform certain work on Defendants' documentary that would consist of conducting and filming

interviews that Defendants arranged, scripted, scheduled and financed and of editing filmed

footage of such interviews, but deny the remaining allegations of Paragraph 11 of Plaintiff's

Complaint.

12. Since at least as early as July 7, 2012 REGRESSIVE was
retained by WAX TRAX and REGRESSIVE has expended
substantial time and effort in creating an audiovisual work
comprising a documentary about the Wax Trax record store and
record label. The work done by WAX TRAX was always
conducted nongratuitously. The work was also conducted in the
absence of any written agreement relating to either (1) defining the
work as work made for hire under the Copyright Act or (2)
assigning rights in REGRESSIVE's work product.

## ANSWER

12.     Defendants admit that Wax Trax retained Plaintiff to work on Defendants'

documentary and deny the remaining allegations of Paragraph 12 of Plaintiff's Complaint.

13.  REGRESSIVE'S work ultimately included:
(a) creating a trailer which it presented twice at CIMM Fest in
April 2013 and which we understand was subsequently displayed
by WAX TRAX;
(b) creating a Kickstarter video publicly displayed in May – June
2015, and which resulted in $80,194 in revenue to WAX TRAX;
and
(c) production and delivery on October 14, 2015 of "Wax Trax!
Documentary Part 1."

## ANSWER

13.     Defendants are without knowledge or information sufficient to form a belief as to

the truth of the allegations of what Plaintiff understands and therefore deny the same and deny

the remaining allegations of Paragraph 13 of Plaintiff's Complaint.

> 14. WAX TRAX acknowledged REGRESSIVE's work on the
> project on the Internet and through social media posts beginning in
> February 2013 and as recently as July 2015, including, but not
> limited to:
> (a) Monday, February 18, 2013 in an Internet post: "We are
> thrilled to be working with an extremely talented team. We tapped
> them for their thorough and engaging 2009 Chicago Punk
> documentary," You Weren't There". (If you care at all about
> Chicago underground music and art during the late 70's, I cannot
> recommend this film enough.";
> (b) February 25, 2013 in an Internet post: "As we move forward,
> all communication to the film crew can be directed to
> regressivefilms@waxtraxchicago.com";
> (c) April 3, 2013 in an Internet post: "Note: Regressive Films will
> also be showing the WT! documentary trailer at a special CIMM
> screening for their feature fiction "Punk Rock Musical", Sacrificial
> Youth on April 19;"
> (d) June 25, 2015 to July 25, 2015 in its performance and display
> of the Kickstarter Video that was produced by REGRESSIVE.

## ANSWER

14.     Defendants admit that they announced Plaintiff's involvement in their

documentary film project on the Internet and wrote entries posted on the Internet quoted in

Paragraph 14 (a)-(c) and deny the remaining allegations of Paragraph 14 of Plaintiff's

Complaint.

> 15. On August 19, 2013 REGRESSIVE communicated to WAX
> TRAX regarding the parameters regarding their business
> relationship including the statement:
> "Our costs for our time (Regressive Films). We can pretty easily
> make a guesstimate based on the amount of interviews conducted,
> footage logged, travel days etc. Editing and Post Production can be
> a little more hard to determine because you never know what

technical curve balls you might be thrown our way (especially with old footage)."

**ANSWER**

15.     Defendants deny the allegations of Paragraph 15 of Plaintiff's Complaint.

16.  Between July of 2012 and October of 2015 REGRESSIVE expended large amounts of time and effort creating audiovisual footage of interviews, organization, planning, travel, actual filming and editing, including dozens of interviews of persons familiar with Jim Nash, Dannie Flesher, Wax Trax the record store and Wax Trax Records.

**ANSWER**

16.     Defendants admit that Plaintiff filmed footage of interviews of persons familiar with Jim Nash, Dannie Flesher, Wax Trax the record store and Wax Trax Records that were arranged, scripted, financed, and produced by Defendants and deny the remaining allegations of Paragraph 16 of Plaintiff's Complaint.

17.  On March 28, 2015 REGRESSIVE submitted to WAX TRAX a budget anticipating it would be incorporated in a written agreement between them, the budget including compensation for REGRESSIVE.  This budget was for $85,000 but factored in a deep discount because REGRESSIVE expected great creative control, and as a budget, unanticipated changes in the work would change the ultimate price for the retainer of REGRESSIVE.

**ANSWER**

17.     Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegation of what Plaintiff expected and therefore deny the same; admit that on March 28, 2015, Plaintiff presented a request for payment for $85,000 but deny it was a "budget"; and deny the remaining allegations of Paragraph 17 of Plaintiff's Complaint.

18.  Also in 2015 REGRESSIVE filmed and edited a "Kickstarter" video specifically to be used by WAX TRAX to generate revenue. On June 25, 2015 SKILLICORN, individually, and on behalf of WAX TRAX, accepted the Kickstarter video from REGRESSIVE,

which trailer was publicly displayed and brought in $80,194 in revenue.

**ANSWER**

18.     Defendants admit that Plaintiff filmed the contents of a video created by

Defendants used for a Kickstarter campaign but deny the remaining allegations of Paragraph 18

of Plaintiff's Complaint.

> 18(ii, *sic*).   On August 2, 2015 REGRESSIVE invoiced WAX
> TRAX for work done by REGRESSIVE totaling $102,177.00,
> after it became apparent that WAX TRAX was contemplating a
> different direction for the REGRESSIVE project, there still being
> an absence of a written agreement between WAX TRAX and
> REGRESSIVE, and considering WAX TRAX's large revenue
> receipt and reluctance to negotiate and sign a contract. The
> accounting included the CIMM Fest trailer, Kickstarter video and
> Wax Trax! Documentary Part 1.  Specifically, the work completed
> to August 2, 2015 included 51 interviews, 2 Kickstarter videos, 2
> trailers, travel days, pre-production work, use of Video & Audio
> gear and support, Parking, Cab, and transportation costs.
> Additionally Post Production time spent to August 2, 2015 totaled
> 387 hours, broken down for interview and archival footage logging
> 240 hours, editing 127 hours with some additional post production
> time, 20 hours. Although there was a need to document the work
> already completed to that date, but still hoping to continue with the
> project, REGRESSIVE's accounting nevertheless reflected a
> discount from what REGRESSIVE would normally charge
> commercial clients.

**ANSWER**

18(ii).  Defendants admit they received an invoice for $102,177; are without knowledge

or information sufficient to form a belief as to the truth of the allegations concerning what

became apparent to Plaintiff and the reasons for the invoice and therefore deny the same; and

deny the remaining allegations of the second paragraph marked Paragraph 18 of Plaintiff's

Complaint.

> 19.  Between August 2, 2015 and October 14, 2015 REGRESSIVE
> continued to work on the project and expended additional time and

8

monies in support thereof.  On October 14, 2015 REGRESSIVE
delivered to WAX TRAX a link to an electronic version of "Wax
Trax! Documentary Part 1."

## ANSWER

19.     Defendants are without knowledge or information sufficient to form a belief as to

the truth of the allegations that Plaintiff continued to work and expend time and money on the

project from August 2-October 14, 2015, and therefore deny the same; admit that Plaintiff sent

Defendants a link to a video site; and deny the remaining allegations of Paragraph 19 of

Plaintiff's Complaint.

20.  Since that time, REGRESSIVE has demanded payment on its
invoice and payment has been either specifically or constructively
refused.

## ANSWER

20.     Defendants admit the allegation that Plaintiff has demanded payment on its

invoice and are without knowledge or information sufficient to form a belief as to the truth of the

remaining allegations of Paragraph 20 of Plaintiff's Complaint and therefore deny the same.

21. On information and belief, WAX TRAX having access to
"Wax Trax! Documentary Part 1" is engaged in reproducing,
copying or preparing derivative work of all or portions thereof in
its creation of an audiovisual work separate from "Wax Trax!
Documentary Part 1" so as to avoid paying REGRESSIVE, to
generate additional revenue for WAX TRAX, and to distribute and
publicly perform the reproduced, copied or derived work.

## ANSWER

21.     Defendants deny the allegations of Paragraph 21 of Plaintiff's Complaint.

22.  Additionally WAX TRAX has asserted that it, rather than
REGRESSIVE, or as co-owner of, "Wax Trax! Documentary Part
1" has a right to commit acts that would otherwise be infringing if
done of REGRESSIVE's work without REGRESSIVE's
permission.

9

**ANSWER**

22.     Defendants deny the allegations of Paragraph 22 of Plaintiff's Complaint, to the

extent Defendants understand them.

> 23.  The foregoing acts and assertions will continue unless WAX
> TRAX is halted by order of this Court.

**ANSWER**

23.     Defendants deny the allegations of Paragraph 23 of Plaintiff's Complaint.

**COUNT I**
**COPYRIGHT INFRINGEMENT OF WAX TRAX! DOCUMENTARY PART 1**

> 24.  REGRESSIVE repeats and alleges paragraphs 1 – 23 as if
> fully set forth herein.

**ANSWER**

24.     Defendants repeat their answers to paragraphs 1-23, as numbered.

> 25.  Missing.

> 26 (*sic*).  WAX TRAX had access to, and on information and
> belief viewed or downloaded one or more copies of "Wax Trax!
> Documentary Part 1".

**ANSWER**

26.     Defendants admit that they viewed video footage Plaintiff apparently has labeled

"Wax Trax! Documentary Part 1" at the insistence of Plaintiff but deny the remaining allegations

of what has been labeled Paragraph 26 of Plaintiff's Complaint.

> 27.  WAX TRAX is, on information and belief, preparing a new
> audiovisual work derivative of the copyrighted work "Wax Trax!
> Documentary Part 1" without the permission or authorization of
> REGRESSIVE.

**ANSWER**

27.     Defendants deny the allegations of Paragraph 27 of Plaintiff's Complaint.

28-30.  <u>Missing</u>.

31 (*sic*).  On information and belief, the copies and derivative
works above (*sic)* are intended to be, and unless enjoined will be,
distributed and will be publicly performed.

### ANSWER

31.     Defendants deny the allegations of what has been labeled Paragraph 31 of

Plaintiff's Complaint, to the extent Defendants understand them.

32.  <u>Missing</u>.

33*(sic)*.  REGRESSIVE owns copyright in "Wax Trax!
Documentary Part 1" and has submitted an application to register
said copyright with the US Copyright Office.

### ANSWER

33.     Defendants are without knowledge or information sufficient to form a belief as to

the truth of the allegations that Plaintiff has submitted an application to register an alleged

copyright and therefore deny the same and deny the remaining allegations of what has been

labeled Paragraph 33 of Plaintiff's Complaint.

34.  The acts complained of above will result in revenue and profit
to WAX TRAX and injury to REGRESSIVE, but the full extent of
said injury cannot be adequately remedied at law.

### ANSWER

34.     Defendants deny the allegations of Paragraph 34 of Plaintiff's Complaint.

35.  REGRESSIVE is entitled to recover from WAX TRAX, the
gains, profits, enrichment and advantages WAX TRAX has
obtained as a result of its acts of copyright infringement.
REGRESSIVE presently is unable to ascertain the full extent of the
gains, profits, enrichment and advantages WAX TRAX has
obtained by reason of its acts of copyright infringement, and prays
for and demands an accounting thereof.

11

**ANSWER**

35.     Defendants deny the allegations of Paragraph 35 of Plaintiff's Complaint.

**COUNT II**
**COPYRIGHT INFRINGEMENT OF KICKSTARTER VIDEO**

36. Plaintiff REGRESSIVE herein realleges and incorporates paragraphs 1 through 35 of this complaint as if fully set forth herein.

**ANSWER**

36.     Defendants repeat their answers to paragraphs 1-35, as numbered.

37.  REGRESSIVE created, filmed, edited and produced the Kickstarter Video described above.

**ANSWER**

37.     Defendants admit that Plaintiff filmed and edited the Kickstarter Video but deny the remaining allegations of Paragraph 37 of Plaintiff's Complaint.

38.     WAX TRAX distributed and publicly performed the Kickstarter Video by, on information and belief, uploading, or otherwise posting and operatively connecting to servers and user computers *(sic)* or otherwise making the video displayed to computer users.

**ANSWER**

38.     Defendants admit that they displayed the Kickstarter Video on the internet and are without knowledge or information sufficient to form a belief as to the truth of the remaining allegations of Paragraph 38 of Plaintiff's Complaint, to the extent they are understandable, and therefore deny the same.

39.  The distribution and performance of the Kickstarter Video was without authorization in light of the failure of WAX TRAX to compensate REGRESSIVE or to reach agreement with REGRESSIVE regarding the terms and conditions of REGRESSIVE's work on the Wax Trax documentary project.

12

**ANSWER**

39.     Defendants deny the allegations of Paragraph 39 of Plaintiff's Complaint.

40.   REGRESSIVE owns copyright in the Kickstarter Video and has submitted an application to register said copyright with the US Copyright Office.

**ANSWER**

40.     Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations that Plaintiff has submitted an application to register an alleged copyright and therefore deny the same and deny the remain allegations of Paragraph 40 of Plaintiff's Complaint.

41. The acts complained of above have resulted in revenue to WAX TRAX and injury to REGRESSIVE, but the full extent of said injury cannot be adequately remedied at law.

**ANSWER**

41.     Defendants deny the allegations of Paragraph 41 of Plaintiff's Complaint.

42. Unless enjoined, WAX TRAX may again distribute and/or display the Kickstarter Video.

**ANSWER**

42.     Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 40 of Plaintiff's Complaint and therefore deny the same.

43. REGRESSIVE is entitled to recover from WAX TRAX, the gains, profits, enrichment and advantages WAX TRAX has obtained as a result of its acts of copyright infringement. REGRESSIVE presently is unable to ascertain the full extent of the gains, profits, enrichment and advantages WAX TRAX has obtained by reason of its acts of copyright infringement, and prays for and demands an accounting thereof.

**ANSWER**

43.     Defendants deny the allegations of Paragraph 43 of Plaintiff's Complaint.

## COUNT III
## QUANTUM MERUIT

44. Plaintiff REGRESSIVE herein realleges and incorporates paragraphs 1 through 43 inclusive, of this complaint as if fully set forth herein.

### ANSWER

44. Defendants repeat their answers to paragraphs 1-43, as numbered.

45. REGRESSIVE performed film and audiovisual work production services to benefit WAX TRAX from July, 2012 until October, 2015 including preproduction, production and post production services for 51 interviews, two trailers, two Kickstarter Videos and editing to create Wax Trax Documentary Part 1.

### ANSWER

45. Defendants admit the allegations that Plaintiff performed certain film and audiovisual work production services on behalf of Defendants, deny Plaintiff produced any documentary or preproduction, production or post production services; and are without knowledge or information sufficient to form a belief as to the truth of the remaining allegations of Paragraph 45 of Plaintiff's Complaint and therefore deny the same.

46. REGRESSIVE performed these services nongratuitously.

### ANSWER

46. Defendants are without knowledge or information sufficient to form a belief as to the truth of the remaining allegations of Paragraph 46 of Plaintiff's Complaint and therefore deny the same.

47. WAX TRAX accepted these services.

### ANSWER

47. Defendants deny the allegations of Paragraph 47 of Plaintiff's Complaint.

14

48.  There is no contract between WAX TRAX and REGRESSIVE to prescribe payment of these service *(sic)*.

**ANSWER**

48.   Defendants deny the allegations of Paragraph 48 of Plaintiff's Complaint.

49. By reason of WAX TRAX's failure to compensate REGRESSIVE for its services, REGRESSIVE has sustained and will continue to sustain substantial monetary injury, loss, and damage to its rights.

**ANSWER**

49.   Defendants deny the allegations of Paragraph 49 of Plaintiff's Complaint.

**COUNT IV**
**DECLARATION OF COPYRIGHT AUTHORSHIP AND OWNERSHIP**

50.  Plaintiff REGRESSIVE herein realleges and incorporates paragraphs 1 through 49 inclusive, of this complaint as if fully set forth herein.

**ANSWER**

50.   Defendants repeat their answers to paragraphs 1-49, as numbered.

51.  REGRESSIVE pleads, in the alternative, that the Kickstarter Video and Wax Trax! Documentary Part 1, are Works of Authorship, under 17 USC 101 - 810.

**ANSWER**

51.   Defendants are without knowledge or information sufficient to form a belief as to

the truth of the allegations of Paragraph 51 of Plaintiff's Complaint and therefore deny the same.

52.  Missing.

53. *(sic)*.  WAX TRAX has asserted or otherwise taken the position that it is one or more of:
(a) sole Author of:
        (i) the Kickstarter Video and/or
        (ii) Wax Trax! Documentary Part 1;
(b) Co-Author of:
        (i) the Kickstarter Video and/or

15

(ii) Wax Trax! Documentary Part 1;
(c) Work Made for Hire Author of:
    (i) the Kickstarter Video and/or
    (ii) Wax Trax! Documentary Part 1;
(d) Assignee of:
    (i) the Kickstarter Video and/or
    (ii) Wax Trax! Documentary Part 1;
(e) Licensee of:
    (i) the Kickstarter Video and/or
    (ii) Wax Trax! Documentary Part 1;
and said assertion of rights is in direct conflict with
REGRESSIVE's ownership and authorship of said works.

## ANSWER

53.    Defendants admit that they have ownership rights in video footage filmed by

Plaintiff under copyright principles concerning authorship and ownership of works and are

without knowledge or information sufficient to form a belief as to the truth of the remaining

allegations of Paragraph 53 of Plaintiff's Complaint and therefore deny the same.

> 54. WAX TRAX's assertion of rights in the preceding paragraph
> creates a real controversy between REGRESSIVE's rights and
> WAX TRAX's rights.

## ANSWER

54.    Defendants are without knowledge or information sufficient to form a belief as to

the truth of the allegations of Paragraph 54 of Plaintiff's Complaint and therefore deny the same.

> 55. This Court has exclusive jurisdiction over determinations of
> Copyright authorship, hence initial ownership, and exclusive
> jurisdiction over determinations of Copyright infringement that
> may occur if a work was reproduced, distributed, performed,
> displayed or derived without authorization.

## ANSWER

55.    Defendants deny the allegations of Paragraph 55 of Plaintiff's Complaint.

> 56. REGRESSIVE has an objectively reasonable apprehension that
> it will be subject to a lawsuit, either an infringement suit brought
> by WAX TRAX should REGRESSIVE continue its work on its

Wax Trax! Documentary, or that WAX TRAX will reproduce,
distribute, perform, display or derive a work that infringes
REGRESSIVE's rights.

### ANSWER

56.     Defendants deny the allegations that Plaintiff has an objectively reasonable

apprehension that Defendants will infringe Plaintiff's rights and are without knowledge or

information sufficient to form a belief as to the truth of the remaining allegations of Paragraph 56

of Plaintiff's Complaint and therefore deny the same.

57. An actual and justiciable controversy exists between
REGRESSIVE and WAX TRAX with respect to the authorship,
validity and the infringement of United States Copyright rights.

### ANSWER

57.     Defendants are without knowledge or information sufficient to form a belief as to

the truth of the allegations of Paragraph 57 of Plaintiff's Complaint and therefore deny the same.

58. The baseless assertion of Copyright rights made by WAX
TRAX are causing, and if they continue, will cause irreparable
damage to REGRESSIVE.

### ANSWER

58.     Defendants deny the allegations of Paragraph 58 of Plaintiff's Complaint.

### AFFIRMATIVE DEFENSES

### Counts I and IV:  Plaintiff's Claims of Copyright Infringement and Request for Declaration of Ownership of "Wax Trax! Documentary Part 1"

As complete and separate affirmative defenses to Counts I and IV of Plaintiff's

Complaint, Defendants allege the following:

59.     Count I of Plaintiff's Complaint alleges that Defendants are in the process of

preparing a new work derivative of the allegedly copyrighted work.  In order to plead copyright

infringement, Plaintiff must allege ownership of a copyright in a work and copying by

Defendants.  The claim that Defendants are in the process of preparing a new work derivative of the allegedly copyrighted work fails to allege Defendants have reproduced the work, unlawfully prepared a derivative work, or other act of copyright infringement.  Count I of Plaintiff's Complaint, alleging copyright infringement of "Wax Trax! Documentary Part 1," thereby fails to state a claim upon which relief can be granted.

60.     Count I of Plaintiff's Complaint alleges that Defendants viewed or downloaded a claimed "documentary" work and that Plaintiff sent the work to Defendants for that purpose. Count I thereby fails to state a claim of copyright infringement because the claimed acts were authorized and licensed by Plaintiff.

61.     Pursuant to Section 411 of the Copyright Act, 17 U.S.C. § 411(a), no civil action for copyright infringement may be instituted until preregistration or registration of a copyright claim has been made.  Count I of Plaintiff's Complaint only alleges that Plaintiff has submitted an application to register the copyright in the "Wax Trax! Documentary Part 1" alleged work, without providing a date of application, whether Plaintiff is claiming sole ownership of the copyright in the work, or any other particular claims.  Plaintiff's Complaint thereby fails to allege facts necessary for subject matter jurisdiction in this case.

62.     Defendants were the primary and dominant authors of the alleged "Wax Trax! Documentary Part 1," and, accordingly, are the copyright owners of the work.  The only contribution of Plaintiff to the alleged work was inseparable and integrated into the alleged work and, as such, did not constitute a copyrightable work.

63.     Alternatively, the alleged "Wax Trax! Documentary Part 1" work was a work made for hire, the copyright in which is owned by Defendants, pursuant to 17 U.S.C. § 201.

18

64. If Plaintiff filed an application to register a claim of copyright in the alleged "Wax Trax! Documentary Part 1" footage and alleged sole ownership of the copyright, Plaintiff willfully misstated the true facts, which, if known, would have caused the Copyright Office to reject Plaintiff's application. Plaintiff has thereby committed a fraud on the Copyright Office, and its infringement claim is barred by unclean hands.

65. Plaintiff owns no lawful registration of copyright in the alleged "Wax Trax! Documentary Part 1" work. This Court lacks subject matter jurisdiction over Plaintiff's copyright claims, under 17 U.S.C.411(a), and, consequently, lacks pendent jurisdiction over Plaintiff's state law claims.

**Count II:  Plaintiff's Claim of Copyright Infringement of Kickstarter Video**

As complete and separate affirmative defenses to Count II of Plaintiff's Complaint, Defendants allege the following:

66. Count II of Plaintiff's Complaint alleges that Defendants posted and publicly performed a video for a Kickstarter campaign that Plaintiff provided to Defendants for the purpose of posting and publicly performing the video. Count II fails to allege facts obviating the authorization given Defendants to post and publicly perform the video, as alleged in the Complaint. Count II thereby fails to state a claim of copyright infringement because it fails to allege any unauthorized reproduction or other act constituting infringement.

67. Plaintiff is estopped by acquiescence from claiming copyright infringement because it authorized and licensed the acts complained of.

68. Defendants were the primary and dominant authors of the alleged "Kickstarter" audiovisual work and, accordingly, are the copyright owners of the work. The only contribution

of Plaintiff to the alleged work was inseparable and integrated into the alleged work and, as such, did not constitute a copyrightable work.

69.     Pursuant to Section 411 of the Copyright Act, 17 U.S.C. § 411(a), no civil action for copyright infringement may be instituted until preregistration or registration of a copyright claim has been made.  Count II of Plaintiff's Complaint only alleges that Plaintiff has submitted an application to register the copyright in the Kickstarter alleged work, without providing a date of application, whether Plaintiff is claiming sole ownership of the copyright in the work, or any other particular claims.  Plaintiff's Complaint thereby fails to allege facts necessary for subject matter jurisdiction in this case.

70.     If Plaintiff filed an application to register a claim of copyright in the alleged "Kickstarter Video" and alleged sole ownership of the copyright, Plaintiff willfully misstated the true facts, which, if known, would have caused the Copyright Office to reject Plaintiff's application.  Plaintiff has thereby committed a fraud on the Copyright Office, and its infringement claim is barred by unclean hands.

71.     Plaintiff owns no lawful registration of copyright in the alleged "Kickstarter" work.  This Court lacks subject matter jurisdiction over Plaintiff's copyright claims, under 17 U.S.C.411(a), and lacks pendent jurisdiction over Plaintiff's state law claims.

### Count III:  Plaintiff's Claim of Quantum Meruit

As complete and separate affirmative defenses to Count III of Plaintiff's Complaint, Defendants allege the following:

72.     The parties agreed that payment in compensation for Plaintiff's work on Defendants' documentary film would be due after completion of the documentary film Defendants conceived and that Plaintiff would like compensation "if (and hopefully when) the

film starts generating income." Defendants relied on these representations and the agreement between the parties when they proceeded to allow Plaintiff to film. Plaintiff is thereby estopped to claim quantum meruit to demand fees contrary to what it had agreed concerning payment.

73. Plaintiff did not perform services on behalf of Defendants for which it could be paid, as it never delivered a completed work or any footage for use in a documentary.

74. Defendants rejected the only film footage shown them by Plaintiff due to its poor quality. Plaintiff is therefore not entitled to any compensation for work not accepted by Defendants.

WHEREFORE, Defendants request that this Court dismiss Plaintiff's Complaint and award Defendants their costs and reasonable attorneys' fees incurred in defending this action, pursuant to 17 U.S.C. § 505.

## DEFENDANTS' COUNTERCLAIM AGAINST PLAINTIFF
## REGRESSIVE FILMS, LLC; JOSEPH LOSURDO; AND CHRISTINA TILLMAN

Defendants Wax Trax! Films, LLC; The Nash Group 2449, LLC; and Julia Nash assert their counterclaim against Plaintiff and its controlling shareholders, Joseph Losurdo and Christina Losurdo, as follows:

### Parties and Jurisdiction

1. Counterclaimants Wax Trax! Films, LLC, and The Nash Group 2449, LLC, d/b/a Wax Trax, are limited liability companies organized under the laws of the State of Illinois, both located at 844 North Humphrey Ave., Oak Park, IL 60302 (collectively, "Wax Trax").

2. Counterclaimant Julia Nash is the manager and principal owner of both Wax Trax! Films, LLC, and The Nash Group 2449, LLC, d/b/a Wax Trax.

3. Counterclaim Defendant Regressive Films, LLC ("Regressive Films") is, on information and belief, a limited liability company organized under the laws of the State of

21

Illinois and located at 5123 North Drake Ave., Chicago, IL 60625.

4.     Counterclaim Defendants Joseph Losurdo and Christina Tillman are individual residents of the State of Illinois, residing at 5123 North Drake Ave., Chicago, IL 60625.  They controlled, and possessed a direct financial interest in, the activities of Regressive Films complained of herein.

5.     This  Court  has jurisdiction over this counterclaim pursuant to 28 U.S.C. §§ 1331, 1338, and 1367; and venue is proper in this Court because Plaintiff and the other Counterclaimants have submitted to this Court's jurisdiction by the filing of the Complaint in this action.

## Wax Trax and Its History

6.     Wax Trax's predecessor was an independent record production company and retail record outlet started in 1975 by Jim Nash and Dannie Flesher.  Jim Nash was the father of Defendant/Counterclaimant Julia Nash.

7.     Wax Trax became renown during the late 1970's and 1980s for introducing the "Industrial Dance" music genre to the United States and became known as America's pre-eminent Industrial Dance record label.

8.     Wax Trax started as a record store in 1975, moved to Chicago in 1978, then expanded into musical recordings in the 1980s under the "Wax Trax! Records" label.

9.     From its inception, Wax Trax introduced influential artists to the American listening public through hundreds of recordings.

10.     Counterclaimant Julia Nash and her brother, Aaron Nash, maintain the estate left by the Wax Trax founders, Jim Nash and Dannie Flesher.

### The Wax Trax Retrospectacle and Documentary

11.    In 2011, Julia Nash created and organized a musical concert event at the Metro nightclub in Chicago, Illinois, entitled "Wax Trax! Retrospectacle—A 33 1/3 Year Anniversary" (the "Retrospectacle").  The sold-out charity event celebrated the lives and influence of her father and Dannie Flesher and featured Wax Trax recording artists over a three-day period.

12.    Wax Trax created audio-visual film footage of the Retrospectacle concert of performances at the concert and interviews of fans, family members, Wax Trax staff and label artists (the "Retrospectacle Film").

### Conception and Initiation of Additional Documentary Footage

13.    Soon after the Retrospectacle event and Film, Ms. Nash conceived plans for an historical documentary to incorporate and expand on the Retrospectacle Film, to cover in more detail the legacy of the Wax Trax label and the Nash family.  Counterclaimants intended to self-fund the documentary (the "Supplemental Documentary").  Initially, Counterclaimants planned on distributing the Retrospectacle Film on DVD and including the Supplemental Documentary as an additional DVD for a limited deluxe edition of the Retrospectacle Film.  Later, Counterclaimants expanded the distribution plans of the Supplemental Documentary so that it would be released to film festivals and theaters prior to distribution of DVD recordings.

14.    In or around July, 2012, Counterclaimants contacted Counterclaim Defendants concerning their interest in helping to edit footage of the Retrospectacle Film.  Subsequently, Counterclaimants and Counterclaim Defendants discussed the filming on behalf of Counterclaimants of additional interviews for the Supplemental Documentary.  Counterclaim Defendants agreed to film and edit the additional interviews for the Supplemental Documentary under the direction of Wax Trax and Ms. Nash and her husband, Mark Skillicorn.

15. In discussing the Supplemental Documentary, the parties expressly agreed that all rights in the film would belong to Wax Trax or Julia Nash. The parties further agreed that Ms. Nash would have complete creative control and discretion over the Supplemental Documentary.

16. The parties, through written exchanges, expressly agreed that the Supplemental Documentary would be considered a work made for hire owned by Wax Trax under the Copyright Act.

**Production of Footage for the Supplemental Documentary**

17. Ms. Nash and Wax Trax created and provided an overall storyline, structure, and content to be used for the Supplemental Documentary, including, specifically, the following:

Creation of the story line of the documentary, based on Ms. Nash's life, knowledge of her father's history, and personal relationships with individuals responsible for the success of the Wax Trax record store, record label and artists;

Selection of photographs, family video, and historical items owned by Ms. Nash for use in the story line;

Selection and arrangement for the appearances of certain artists and other individuals connected to Wax Trax Records in the film;

Creation of the content and subject matter of artist interviews and conversations;

Creation of the specific primary questions to ask individuals appearing in the film;

Creation of the chronology of the film;

Selection of the music to include in the film.

Securing and paying for rights to use photos, footage, and audio in the film.

18. Much of the content and many of the creative choices for the script of the Supplemental Documentary were taken from or based on content in the Retrospectacle Film,

including the selection of Wax Trax artists and store employees to speak in the film, the subject matter those individuals would cover, and questions to be asked of them.

19.     Counterclaimants delivered to Counterclaim Defendants footage of the Retrospectacle Film; items associated with the Wax Trax Records label and store; photographs, videos and personal family items of Julia Nash; and photographs and videos of Wax Trax artists for incorporation into film footage.

20.     Counterclaim Defendants filmed interviews that Counterclaimants selected, arranged, scripted, scheduled and financed.  The majority of artists and other individuals who appeared in footage dealt with Counterclaimants prior to their filming and, in all instances, signed releases identifying Wax Trax as the exclusive owner of the filmed interview. Counterclaimants funded all travel, insurance, legal work and costs and expenses incurred in connection with the filming.

21.     Counterclaimants had sole rights of final approval of Supplemental Documentary footage and had sole responsibility over content, marketing, fundraising, accounting, insurance and legal decisions concerning the project.

22.     Counterclaim Defendants' only input into the Supplemental Documentary film process was supplying the camera to use, camera angles, lighting and preliminary editing.

23.     In addition to Regressive Films, Wax Trax hired an audio technician, three camera operators and cinematographers, production assistants, a licensing coordinator, a transcriber, a make-up artist, and various consultants.

24.     The parties agreed that Regressive Films would be compensated for its film work based on the amount of time it spent on the film, day rate times, and how many days worked, after the film was completed and revenue was generated by the distribution and exhibition of the

contemplated Supplemental Documentary. Payment to Counterclaim Defendants specifically was conditioned on the generation of profits from the distribution of the Supplemental Documentary.

25.     Counterclaim Defendants agreed in writing to the aforesaid payment arrangements, stating:

> Compensation—As we said from the beginning, our main objective is to get the film finished, and we feel any advanced monies from wherever (Kickstarter, Distributors, etc.) goes towards making that happen. But if (and hopefully when) the film starts generating income, we would like to be compensated for our time put into it as Directors/Producers/Editors/Post Production, etc. It would be based on our day rate times how many days we worked on the film. With that said, we would structure a payment schedule to start after the film was completed that would be amicable to everyone involved.

26.     As time passed from 2013-2015, Regressive Films' work was unsatisfactory. Workflow issues became a major concern, as did unprofessional business practices, and Counterclaim Defendants failed to provide budgets for their work when requested by Counterclaimants. Counterclaim Defendants failed to complete any editing in a timely manner consistent with industry standards, and failed to deliver any footage at all to Counterclaimants. Due to the delays in completing any edited footage, the working relationship between the parties began to deteriorate in the last half of 2014.

27.     In November, 2014, Counterclaim Defendants represented that they would commence editing the footage shot. At the same time, they abruptly refused to communicate with Counterclaimants other than by email. Counterclaim Defendants failed to show any work to Counterclaimants for almost a year thereafter.

28.     In April 2015, after five months of refusing to meet with Counterclaimants, the parties agreed to meet to discuss a post-production schedule to finalize the Supplemental

Documentary.  The parties agreed the first half of the film would be finished by the end of June, 2015, with the final edit completed by October 31, 2015.  That deadline would allow submission of the completed Supplemental Documentary for showing at the South by Southwest, Tribeca, and Berlin film festivals.

### Counterclaim Defendants' Failure to Comply with the Parties' Agreement

29.     Prior to the aforesaid deadlines, Counterclaim Defendants retained an attorney, who contacted Counterclaimants with a demand for full payment for the filming work Counterclaim Defendants had completed.  Despite the agreement of the parties that Counterclaim Defendants would receive compensation after revenues were generated by the release and showing of the completed Supplemental Documentary, Counterclaim Defendants submitted a bill for $102,000 in August, 2015.

30.     Counterclaim Defendants had never provided Counterclaimants with any completed work of any kind prior to demanding payment, nor had they ever provided Counterclaimants with any rough or final footage, radio edit, first assembly, rough cut, first cut, fine cut, drafts, work in progress, or anything that illustrated the vision of the Supplemental Documentary was being executed.

### The Wax Trax Kickstarter Campaign

31.     In order to finance post-production costs, Counterclaimants raised money through online sales of various personal memorabilia and merchandise relating to Wax Trax.  They also arranged to raise money via a "Kickstarter" campaign.  The campaign launched on June 25, 2015.

32.     Counterclaimants advertised and promoted the campaign, arranged and executed delivery of all premiums, and had exclusive responsibility over all rewards and financial issues.

33.     Counterclaimant Julia Nash and her husband Mark Skillicorn wholly created a script for a three-minute promotional video ("Pitch Video") for the Kickstarter campaign, which Julia Nash read when filmed.

34.     The only involvement in the Kickstarter Campaign of Counterclaim Defendants was the filming of Ms. Nash's performance of the Pitch Video script and co-editing of the Pitch Video promoting the Kickstarter campaign.

<u>**Termination of Parties' Relationship**</u>

35.     On August 8, 2015, soon after Counterclaim Defendants demanded payment from Counterclaimants for $102,000, the parties agreed that all work on editing film footage would cease until a new agreement on the work provided by Counterclaim Defendants could be reduced to writing.  Counterclaimant accordingly did not authorize any further work on the project after this date.

36.     Counterclaimants thereafter requested to meet Counterclaim Defendants on several occasions to discuss the aforesaid compensation requested, but Counterclaim Defendants refused to meet.  Counterclaimants specifically requested meetings in order to consider the validity of the requested compensation for film footage that had not been reviewed, authorized or delivered to Counterclaimants.

37.     Despite the parties' agreement to discontinue film editing work until the dispute on compensation could be resolved, Counterclaim Defendants continued to work on editing filmed footage.

38.     Finally, Counterclaim Defendants agreed to meet, but only contingent on the screening by Counterclaimants of footage that had been completed after compensation had been demanded.

28

39.     On October 14, 2015, Counterclaim Defendants sent a link to non-downloadable film footage on the web site Vimeo to Counterclaimants.  The footage at the site, which Counterclaim Defendants call "Documentary Part 1," displayed a large water mark consisting of Regressive Films' name, which blocked much of the screen.

40.     The footage fell far below the expectations of Counterclaimant and standards followed in the industry.  The "Documentary Part 1" was not of "Part 1" of any documentary but a short amount of footage encompassing approximately 10% of the subject matter of the contemplated film.

41.     Even after Counterclaimants viewed the footage, Counterclaim Defendants again refused to meet to discuss the outstanding issues regarding the compensation demanded.

42.     Due to the failure of Counterclaim Defendants to comply with the parties' agreement, Counterclaimant could not submit the contemplated Supplemental Documentary to the South by Southwest, Tribeca, or Berlin film festivals as planned.

43.     Shortly thereafter, on November 14, 2015, three years after retaining Regressive Films, Counterclaimants informed Counterclaim Defendants that they wished to terminate their relationship and would explore another option for producing their Supplemental Documentary film.

44.     After termination of the working relationship with Counterclaim Defendants, Counterclaimants hired a new cinematographer and audio technicians to attempt to create the film they had conceived and written.

45.     Beginning in January 2016, Counterclaimants have proceeded to create their documentary (called the "Monumentary").  The progress in completing the audiovisual work

since that time has far exceeded anything that Counterclaimants could produce working with the Counterclaim Defendants over the course of three years.

### COUNT I:  DECLARATORY JUDGMENT OF OWNERSHIP OF SOLE COPYRIGHT IN MONUMENTARY FILM

46.     Counterclaimants re-allege paragraphs 1-45 of the Counterclaim.

47.     Counterclaim Defendants, by virtue of their filing of the Complaint herein and otherwise, have questioned the ability of Counterclaimants to create, produce, distribute and perform their Monumentary film.  An actual and justiciable controversy exists between the parties as to whether the Monumentary film infringes or will infringe any copyrights owned by Counterclaim Defendants.

48.     Counterclaimants have not copied anything owned or created by Counterclaim Defendants.

49.     The Monumentary film created by Counterclaimants is wholly original to Counterclaimants.

50.     Counterclaimants own the sole copyright interest in the Monumentary film footage created since January of 2016.

51.     Counterclaimants are entitled to a declaratory judgment, pursuant to 28 U.S.C. §§ 2201-2202, that Counterclaimant's Monumentary film does not reproduce anything originating with Counterclaim Defendants or infringe any copyright Counterclaim Defendants may own.

### COUNT II:  DECLARATORY JUDGMENT OF OWNERSHIP OF COPYRIGHT IN WAX TRAX! PART 1 FOOTAGE

52.     Counterclaimants re-allege paragraphs 1-45 of their Counterclaim.

53.     Counterclaim Defendants, by virtue of their filing of the Complaint herein and allegedly filing an application to register its claim of copyright, have questioned Counterclaimants' rights in film footage they have labelled "Wax Trax! Documentary Part 1."

54.     Counterclaimants were the primary and dominant authors of the alleged "Wax Trax! Documentary Part 1" footage.

55.     The only contribution of Counterclaim Defendants to the alleged "Wax Trax! Documentary Part 1" footage was inseparable and integrated into the alleged work.  As such, Counterclaim Defendants' contribution to the footage does not constitute a copyrightable work.

56.     Counterclaimants are entitled to a declaratory judgment, pursuant to 28 U.S.C. §§ 2201-2202, that they were the dominant authors of the "Wax Trax! Documentary Part 1" footage and all other footage in possession of Counterclaim Defendants created in the course of the Supplemental Documentary project; Counterclaim Defendants' contribution was inseparable and integrated into that footage; and Counterclaimants accordingly own the copyright in such footage.

57.     In the alternative, prior to and during creation of the alleged "Wax Trax! Documentary Part 1" work, the parties exchanged writings recognizing the work contributed by Counterclaim Defendants was a work made for hire.  Said writings constitute a written instrument signed by the parties expressly agreeing that the work would be considered a work made for hire owned by Counterclaimants, pursuant to 17 U.S.C. § 101.

58.     Counterclaimants are entitled, in the alternative, to a declaratory judgment that the copyrights in "Wax Trax! Documentary Part 1" and all other footage in possession of Counterclaim Defendants created in the course of the Supplemental Documentary project are works made for hire, which are owned by Counterclaimants, pursuant to 17 U.S.C. § 201(b).

**COUNT III:  DECLARATORY JUDGMENT OF OWNERSHIP
OF COPYRIGHT IN "KICKSTARTER VIDEO"**

59.     Counterclaimants re-allege paragraphs 1-45 of their Counterclaim.

60.     Counterclaimants conceived the aforesaid Kickstarter campaign to raise funds for their Supplemental Documentary film, wrote the script of the Pitch Video, and selected and provided the location and performance for the Pitch Video.

61.     The only contribution of Counterclaim Defendants to the Kickstarter Pitch Video was the filming of the performance in the Pitch Video by Counterclaimant Julia Nash and co-editing the video with Wax Trax.

62.     Counterclaimants were the primary and dominant authors of the alleged "Kickstarter" work.

63.     The aforesaid contribution of Counterclaim Defendants to the Pitch Video was inseparable and integrated into the work and, as such, does not constitute a copyrightable work.

64.     Counterclaimants are entitled to a declaratory judgment that they were the dominant authors of the Pitch Video; Counterclaim Defendants' contribution was inseparable and integrated into that work; and Counterclaimants accordingly own the copyright in the Pitch Video.

## COUNT IV:  FRAUD ON THE COPYRIGHT OFFICE

65.     Counterclaimants re-allege paragraphs 1-45 of their Counterclaim.

66.     On information and belief, Counterclaim Defendant Regressive Films, LLC, filed applications to register its claims of copyright in the alleged "Wax Trax! Documentary Part 1" footage and Kickstarter Pitch Video.

67.     On information and belief, said applications contained material and willful misstatements that Counterclaim Defendant Regressive Films was the owner of the copyrights in the works and that the works were not derivative works.  On information and belief, Counterclaim Defendants willfully omitted the true facts that the claimed works were derivative

works based on the Retrospectacle Film and that the authors of the works are the

Counterclaimants.

68.     If known, the aforesaid facts would have caused the Copyright Office to reject

Regressive Films' applications.

69.     Counterclaim Defendants' aforesaid copyright applications perpetrated a fraud on

the Copyright Office.

## COUNT V:  BREACH OF CONTRACT

70.     Counterclaimants re-allege paragraphs 1-45 of their Counterclaim.

71.     Counterclaimants and Counterclaim Defendants entered into an enforceable

agreement providing for the following:

> Counterclaim Defendants would film footage of interviews that Counterclaimants would select, arrange and write;
> Counterclaim Defendants would provide Counterclaimants with timely footage of interviews for Counterclaimants' approval;
> Counterclaimants would be responsible for selecting the interviews; providing the scripts for the interviews and other spoken performances, paying the expenses for the interview filming; and providing existing filmed footage and archival items;
> All copyright interests in the Supplemental Documentary would belong to Counterclaimants;
> Payment to Counterclaim Defendants for their filming would be contingent on distribution and exhibition of a final cut of the Supplemental Documentary and generation of profits therefrom.

72.     Counterclaim Defendants' aforesaid failure to deliver any footage in a timely

manner; failure to produce and deliver a first assembly, radio edit, rough cut, first cut, fine cut or

final cut of the Supplemental Documentary; demands for payment; failure to deal in good faith

with Counterclaimant; and claims of copyright interests in the works prepared pursuant to the

parties' agreement constitute material breaches of the parties' agreement.

73.     Counterclaim Defendants are not entitled to any payment from Counterclaimants

due to their aforesaid breach of the parties' agreement and failure to deliver an end product or

draft of an end product.

74.     Counterclaim Defendants are not entitled to any payment from Counterclaimants for lack of performance or consideration.

75.     Counterclaimants have suffered damages from Counterclaim Defendants' aforesaid breaches of the parties' agreement.

## COUNT VI:  REPLEVIN OF PERSONAL PROPERTY

76.     Counterclaimants re-allege paragraphs 1-45 of their Counterclaim.

77.     Counterclaim Defendants gained possession of personal property owned by Counterclaimants, including the Retrospectacle film footage, Nash family home movies, other film footage, heirlooms, and memorabilia from Wax Trax's record store and label archives, for purposes of including them in footage for the Supplemental Documentary.

78.     After Counterclaim Defendants refused to communicate with Counterclaimants and Counterclaimants terminated the parties' relationship, Counterclaim Defendants retained the materials Counterclaimants had provided to them and all footage that it filmed (collectively, "Counterclaimants' Personal Property").

79.     Counterclaimants have demanded return of Counterclaimants' Personal Property, but Counterclaim Defendants continue to wrongfully retain such property.

80.     As the producer of the "Wax Trax! Documentary Part 1" and Kickstarter Pitch Video film footage, Counterclaimants are the owners of all tangible film footage and other materials related thereto.

81.     Counterclaim Defendants have refused to return to Counterclaimants the aforesaid film footage.

82.     Counterclaimants are the owners of and lawfully entitled to possession of the aforesaid Counterclaimants' Personal Property.

83.     Counterclaim Defendants' aforesaid wrongful detention of Counterclaimants' Personal Property is not for any tax, assessment or fine levied by virtue of any law of the State of Illinois against Counterclaimants' Personal Property, or against Counterclaimants individually, nor been seized under any lawful process against the goods and chattels of Counterclaimants.

84.     Counterclaim Defendants' retention of Counterclaimants' Personal Property violates Counterclaimants' rights to that property, and Counterclaimants are entitled to an order of replevin for possession of its aforesaid property.

## COUNT VII:  CONVERSION

85.     Counterclaimants re-allege paragraphs 1-45 and 77-84 of their Counterclaim.

86.     Counterclaim Defendants' aforesaid retention of Counterclaimants' Personal Property constitutes unlawful conversion under the common law.

## PRAYER FOR RELIEF

WHEREFORE, Counterclaimant prays that:

1.      The Court issue a declaratory judgment that:

        a.      Counterclaimants' Monumentary film does not copy or infringe anything originating with or owned by Counterclaim Defendants;

        b.      The copyrights in the "Wax Trax! Documentary Part 1" footage and all other works created over the course of the Supplemental Documentary project, including the Kickstarter Pitch Video, are owned by Counterclaimants;

        c.      Plaintiff/Counterclaim Defendants have no copyright ownership interest in the "Wax Trax! Documentary Part 1" footage or any other footage or works created over the course of the Supplemental Documentary project, including the Kickstarter Pitch Video; and

      d.     Any registrations resulting from applications allegedly filed by Counterclaim Defendants in the "Wax Trax! Documentary Part 1" and all other works created by Counterclaim Defendants over the course of the Supplemental Documentary project, including the Kickstarter Pitch Video, are invalid and should be cancelled or transferred to Counterclaimants.

2.     The Court enjoin and restrain, during the pendency of this action and permanently thereafter, Counterclaim Defendants, their agents, servants, employees, attorneys, and all others holding by, through or under Counterclaim Defendants, or in active concert or participation with Counterclaim Defendants, from:

      a.     interfering with Counterclaimant's creation, distribution, and use of the Monumentary film they have created and all other works or audio visual footage they may create in the future concerning Wax Trax, the Wax Trax record store, the Wax Trax music label, Jim Nash and Dannie Flesher, or subjects relating thereto; and

      b.     representing to the general public or trade that Counterclaim Defendants have any ownership interest or involvement in the Monumentary film, any Supplemental Documentary footage, or any work relating to the subject matter thereof.

3.     The Court order Counterclaim Defendants to withdraw their alleged applications or any resulting registrations of the copyrights in the "Wax Trax! Documentary Part 1," Kickstarter Pitch Video, and any other work created over the course of the Supplemental Documentary project.

4.     The Court issue an order for replevin against Counterclaim Defendants for the delivery to Counterclaimants of Counterclaimants' Personal Property; the value of any

Counterclaimants' Personal Property not delivered; and damages suffered by Counterclaimants due to Counterclaim Defendants' detention of Counterclaimants' Personal Property.

5.      The Court order Counterclaim Defendants to turn over to Counterclaimants all film footage relating to the Supplemental Documentary project, including the footage identified by Counterclaim Defendants as "Wax Trax! Documentary Part 1"; the Retrospectacle Film footage; the Kickstarter Pitch Video; and footage intended for the Supplemental Documentary.

6.      The Court award Counterclaimant its damages caused by Counterclaim Defendants' breach of the parties' agreement.

7.      The Court award Defendants and Counterclaimants their reasonable costs, including attorneys' fees expended in defending the Complaint and bringing their Counterclaim, pursuant to 17 U.S.C. § 505.

8.      The Court grant all such other and further relief as the Court may deem just and proper.

## JURY DEMAND

Counterclaimants, pursuant to Federal Rule of Civil Procedure 38(b), hereby demand a trial by jury on all issues triable of right by jury.

Respectfully submitted,

YOUNG, BASILE, HANLON &
MACFARLANE P.C.

By: /s/Thomas P. Arden/
     Thomas P. Arden
     (ARDC No. 6191474)
     150 N. Wacker Drive
     Suite 1450
     Chicago, Illinois 60606
     312-445-9322
     312-445-9325 (fax)
     arden@youngbasile.com

JOSEPH J. MADONIA & ASSOCIATES

By: /s/Joseph J. Madonia/
    Joseph J. Madonia
    (ARDC No. 6205043)
    5757 North Sheridan
    Suite 10A
    Chicago, Illinois 60660
    312-464-9000
    312-953-9000
    773-654-5066 (fax)
    josephmadonia@gmail.com

Attorneys for Defendants/Counterclaimants

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that on this 12th day of August, 2016, I caused the foregoing DEFENDANTS' ANSWER AND COUNTERCLAIM to be filed with the Court by electronic filing protocols, and that such document will therefore be electronically served upon all attorneys of record registered with the Court's ECF/CM system by electronic mail.

/Joseph J. Madonia/